ORIGINAL

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

Willie Glass, Jr.,

    Petitioner,

v.

The People of the State of Michigan,
Jennifer Granholm, Attorney General,

    Respondents.
_____/

Case No Richard Alan Enslen
   U.S. District Judge

Ellen S. Carmody
U.S. Magistrate Judge

5:01-CV-121

Hugh M. Davis, Jr. (P12555)
Timothy M. Holloway (P42977)
Attorneys for Petitioner
450 W. Fort Street, #200
Detroit, MI  48226
(313) 961-2255

Jennifer M. Granholm (P40922)
Attorney General
The Williams Building, 7th Floor
Lansing, MI 48913-0001
(517) 373-0110
_____/

## PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C., §2241

  Now comes Petitioner, Willie Glass, Jr., by and through his counsel, Hugh M. Davis, Jr. and Timothy M. Holloway, petitions the Court for a writ of habeas corpus, pursuant to 28 U.S.C. §2241 and states in support:

  1. Petitioner brings this petition alleging that the grand jury, which indicted

1

him, was composed in a manner which violated the Equal Protection Clause and the Sixth Amendment right to a jury composed of a fair cross section of the community.

2. Jurisdiction for pretrial petitions is invoked pursuant to 28 U.S.C. §2241. Atkins v. State of Michigan, 644 F.2d 543, 546 n. 1. (6th Cir. 1981) citing Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 503-04 (1973) (Rehnquist, dissenting) and Moore v. DeYoung, 515 F.2d 437, 441-42 (3r Cir. 1975).

3. These issues have been exhausted through the Michigan courts and resulted in a final published opinion by the Michigan Supreme Court in People v. Willie Glass, Jr., 464 Mich.266 (#114795, 6-12-2001). (See Motion for Immediate Consideration, Exhibit 1). The issues were also properly exhausted through the trial court, People v. Willie Glass, Jr., (Eaton County Circuit #95-000285-FC), and the Michigan Court of Appeals, #206426, Poeple v. Glass, 235 Mich. App. 455 (1999). (Exhibit 1, attached).

4. The State of Michigan and Jennifer Granholm are the appropriate respondents due to the fact that Mr. Glass is not incarcerated and is released on bond. See, Rule 2(b), Rules Governing §2254 Cases and Advisory Committee Note, paragraph seven (7) designated as subsection (3) and Atkins v. State of Michigan, 644 F.2d 543 (6th Cir. 1981).

5. Jennifer Granholm is the Attorney General of the State of Michigan.

6. Mr. Glass is a resident of Macomb County, Michigan.

7. There are no other procedures by which these issues can be entertained by the Michigan Courts.

8. Specifically, the State violated Mr. Glass's Equal Protection and 6th Amendment fair cross section of the community rights when the Michigan Court of Appeals granted the County Prosecutors' petition for a Multi-County Grand Jury. The Court of Appeals, at the request of the three County Prosecutors, established that the Multi-County Grand Jury consist of 17 jurors, selected as follows: 6 jurors from Ingham County; 6 jurors from Eaton County; and 5 jurors from Clinton County. A simple review of the racial population of the three counties reveals that the Court of Appeals had chosen a grand jury venire make up in which counties with the smallest black population were systematically over-represented and the county with the largest black population was systematically under-represented (6-6-5). (Exhibit 3).

9. This arbitrarily chosen Multi-County Grand Jury, facially biased and allegedly intentionally chosen, indicted Glass on the charge that he did conspire to deliver 650 grams or more of cocaine, in violation of MCL 333.7401(2)(a)(I).

10. The procedures involved in denying the claims of Mr. Glass were not "full and fair" as required by the constitution and by case law.

11. The reason the procedures were not "full and fair" is because the state courts denied Mr. Glass the ability to produce witnesses and documents to develop

the claim that the grand jury was unconstitutional due to the manner in which minorities were excluded from the composition of the grand jury.

12. Mr. Glass attempted to call witnesses and produce documents which were relevant to the composition of the grand jury.

13. The state claimed that state law prevented any inquiry as to these documents and witnesses.

14. Mr. Glass has a right to a proper probable cause determination by a constitutionally adequate entity prior to having this continued restraint maintained on his liberty and prior to proceeding to trial.

15. A pretrial petition under 28 U.S.C. §2241 is proper under these circumstances.

WHEREFORE, the Petitioner prays that the Court grant the writ and quash the Indictment. Alternatively, the Petitioner prays that the Court grant a conditional writ based on whether the state employs proper procedures, to determine the issues surrounding the grand jury proceedings, within a time frame to be set by the Court.

Respectfully submitted,

Dated: 10-2-01

_____
Hugh M. Davis, Jr.
Co-counsel for Petitioner

Dated: 10-2-01

_____
Timothy Holloway
Co-counsel for Petitioner

## MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C., §2241

In December 1994, county prosecutors from Ingham, Eaton, and Clinton Counties petitioned the Court of Appeals to convene a Multi-County Grand Jury to investigate alleged criminal activity. The petition by the county prosecutors was apparently focused on cocaine traficking and certain related violent crimes in the Lansing area. The prosecutors' petition included a request for a suppression order. On January 13, 1995, the Michigan Court of Appeals granted the petition, with suppression order, to establish a Multi-County Grand Jury involving Ingham, Eaton, and Clinton Counties, per MCL 767.7b.

The Court of Appeals order established that the Grand Jury consist of 17 jurors, selected as follows: 6 jurors from Ingham County; 6 jurors from Eaton County; and 5 jurors from Clinton County. (Exhibits 2 and 3, attached).

Mr. Glass was indicted by the same Multi-County Grand Jury on April 27, 1995, on the charge that he did unlawfully conspire, combine, confederate and agree to deliver 650 grams or more of cocaine, in violation of MCL 333.7401(2)(a)(I). If convicted at trial, Mr. Glass faces a mandatory life jail sentence. On September 8, 1995, Mr. Glass waived his right to a preliminary exam in exchange for an offer by the prosecutor that Mr. Glass may plead guilty to conspiracy to deliver between 224 and 649 grams of cocaine. However, Mr. Glass' attorney was careful to "be clear on

the record that [Defendant is] not waiving any of [his] defenses by the waiver of the examination except the right to have the examination." Numerous other individuals were indicted for drug related crimes by the same Multi-County Grand Jury. The vast majority of those indicted were African-Americans living in Lansing. Mr. Glass' papers in the trial court allege that forty-one of the forty-three indictees were minorities.

On February 21, 1996, Mr. Glass filed a motion to dismiss, based on the fact that the Multi-County Grand Jury violated his Sixth Amendment, Equal Protection, and Due Process rights by impermissibly and intentionally excluding blacks from the grand jury pool. Mr. Glass also requested that the prosecutor reveal the racial make-up of the Grand Jury venire and the final Grand Jury in order to discover further evidence of racial discrimination.

Mr. Glass based his motions on data received fro the 1990 Census Book. A simple review of the racial population of the three counties revealed that the Court of Appeals had chosen a grand jury venire make-up in which the counties with the smallest black population were systematically over-represented and the county with the largest black population was systematically under-represented (6-6-5). Ingham County, with a total population of 281,912, contains 27,837 blacks, or 9.8% of the county population. Eaton County, with a total population of 92,879, contains 3,310 blacks, or a 3.56% black population in the county. Eaton County represents 21.47% of the total population of the

three counties. Clinton County with a total population of 57,883, contains 218 blacks, or a 0.38% black population in the county. Clinton County represents 13.8% of the total three county population. Thus, Ingham County, with a 9.87% black population, had 6 grand jurors, while Clinton County, with a 0.37% black population, had 5 grand jurors on the panel. The three counties have a combined population of 432,674, with 31,365 African-Americans, for a total of 7.25 of the population. If the Multi-County Grand Jury had been correctly devised for the population makeup of the three counties, and not even figuring in the racial disparity in the counties, the final 17 person grand jury would have consisted of 11.08 persons from Ingham County, 3.65 persons from Eaton County, and 2.27 persons from Clinton County, or 11, 4, and respectively.

Mr. Glass' motion included an affidavit from a witness at the grand jury proceedings who stated that no blacks were present on the final 17 person Grand Jury. Subsequently, Mr. Glass obtained a second affidavit from a witness appearing at the Multi-County Grand Jury, stating that "[t]here were no blacks among the grand jurors."

The facts presented thus far by Mr. Glass concerning the population, population percentage of the three counties, and the fact that the tri-county grand jury should have had a proportional 11-4-2 grand juror makeup, instead of 6-6-5, has never been disputed by the People and must be regarded as undisputed facts. Additionally, it is not disputed that no black person or other minority appeared on the final 17 person multi-county

grand jury. To make the picture even more exclusionary, there are a total of 16,892 Asian, Hispanic and other minorities in Ingham County, 5,330 in Eaton County, and 1,026 in Clinton County.

Mr. Glass' motion also requested that he be provided with a copy of the petition filed by the various county prosecutors setting forth the order creating the Grand Jury. On information and belief, the 6-6-5 makeup of the 17 person grand jury was a matter of agreement between the three county prosecutors, as opposed to the initiative of the Court of Appeals. If proven by unsealing of the petition, such evidence would provide further proof of intentional discrimination, especially considering the unadorned order of the Court of Appeals, which disproportionately allocated the number of grand jurors among the counties without any known objective.

The preceding improper actions in establishing the multi-county grand jury become even more suspect with it is understood that Mr. Glass was indicted in Eaton County, and not Ingham County. The People allege a general conspiracy over a long period of time< in which only one witness (who may now be unavailable) claims that any of the activity took place in Eaton County. There is no question that the overwhelming majority of the alleged activity took place in Ingham County and the indictment out of Eaton County reeks of venue manipulation with racial overtones and political objectives unrelated to rational law enforcement objectives.

Mr. Glass attempted, in the trial court, to subpoena witnesses and documents to proof the manner in which the grand jury was illegally compiled. Nearly all of these witnesses refused to testify and produce documents. This refusal was based on MCL 767.14 which does not allow challenges to the grand jury except for the grounds stated in MCL 767.13. MCL 767.13 allows challenges only as to the competency of any individual.

The Michigan Court of Appeal reversed the Trial Court. The Court of Appeals held that an evidentiary hearing was necessary and that MCL 7767.13 and MCL 767.14 had no impact on constitutional challenges. (Exhibit 1, attached). It should be noted that the predecessor to MCL 767.13 was first enacted in 1927. Apparently, it may have been based on traditional concerns about the *secrecy of grand jury deliberations and other concerns about the validity of procedures.* See, People v. Morgan, 133 Mich. 550 (1903), People v. Thompson, 122 Mich. 411, 416-18 (1899) and People v Reigel, 120 Mich. 78, 84-89 (1899).

In People v. Glass (after remand), 464 266 (2001), the Michigan Supreme Court denied Mr. Glass's claims that the manner in which the grand jury was formed violated the Sixth Amendment and the Equal Protection clause. The Court stated that Mr. Glass could not prove the violations if a hearing was held. Glass, 464 Mich. at 285-86 This was problematic because the Court did not see the evidence which would be produced at any given hearing.

In dissent, Justice Cavanagh disagreed with the conclusion of the majority that Mr. Glass should not be given the ability to produce evidence in support of his claims. He would have affirmed "the Court of Appeals decision to unseal the grand jury records so that defendant might obtain evidence to support his constitutional claims." Glass, 464 Mich. at 291 & 295-96.

Mr. Glass now brings this pretrial petition.

### A. The finding that no violation of the Equal Protection Clause and/or the Sixth Amendment was not made pursuant to a "full and fair" hearing, requiring review by the habeas court.

It has long been held that a "full and fair" hearing is necessary for a state court's factual findings to be subject to any deference by the federal habeas court. Townsend, *infra*. In the case at bar, the defendant was not allowed to call any relevant witnesses or bring any records into the trial court to establish the violations of the Equal Protection Clause and the Sixth Amendment. The state court left defendant with a constitutional claim by which there is no means to enforce. This result is unconstitutional.

When an evidentiary hearing is necessary, to determine facts relevant to a constitutional claim, the state's failure to hold such a hearing violates Due Process. Nevers. v Killinger, 169 F.3d 352, 373-74 & n. 25 (6th Cir. 1999) (failure of state court to conduct evidentiary hearing "resulted in *decision contrary to established law*" even though the state court relied on affidavits submitted by Nevers' counsel); Townsend

11

v. Sain, 372 U.S. 293 (1963) (requirement of a "full and fair" hearing is a constitutional matter); Case v. Nebraska, 381 U.S. 336 (1965) (suggesting lack of adequate procedures for hearing federal constitutional claims in state court may violate Due Process) . "The Supreme Court held that a federal court was empowered to grant an evidentiary hearing "where an applicant for a writ of habeas corpus allege[d] facts which, if proved, would entitle him to relief." Cardwell v. Greene, 152 F.3d 331, 336 (4th Cir. 1998) cert. denied 525 U.S. 1037 (1998) quoting Townsend v. Sain, 372 U.S. 293, 312-13 (1963).

Although §2241 is not subject to the standards of deference set forth in the Antiterrorism and Effective Death Penalty Act, a similar analysis applies to habeas cases filed after the passage of the AEDPA. Cardwell citing Lindh v. Murphy, 521 U.S. 320 (1997). Post-AEDPA cases are therefore referenced by analogy.

Townsend and Kenney v. Tamayo-Reyes, 504 U.S. 1 (1992) "together limit the discretion of a federal court to *deny* an evidentiary hearing." Cardwell, 152 F.3d at 336 (emphasis in original); see also, Michael Williams v. Taylor, 529 U.S. ___, 120 S.Ct. 1479, 146 L.Ed.2d 435, 499 (2000) citing Caldwell with approval. It has been long established that the petitioner's claim must be considered true and valid when no evidentiary hearing concerning the claims has been held. Denton v. Hernandez, 112 S.Ct. 1728, 1733-34 (1992); House v. Mayo, 324 U.S. 42, 45-46 (1945); Fowler v. Jago, 683 F.2d 983 (6th Cir. 1982) interpreting Townsend, *supra;*

12

Alcorn v. Smith, 781 F.2d 58, 60 (6th Cir. 1986), see also, Blackledge v. Allison, 431 U.S. 63, 83 & n. 25 (1977) (A state prisoner is "entitled to careful consideration and plenary processing of his claim including full opportunity for presentation of the relevant facts.") and Wingo v. Wedding, 418 U.S. 461, 468 (1978) quoting Fay v. Noia, 372 U.S. 391, 416 (1963).

"[A] federal evidentiary hearing is required if a habeas petitioner alleges facts which, if proved, would entitle him to relief and the state courts — for reasons beyond the control of the petitioner — never considered the claim in a full and fair hearing." Porter v. Gramley, 112 F.3d 1308, 1317 (7th Cir. 1997) citing Townsend, infra, and Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). Under these circumstances, if the habeas petitioner alleges facts which, if true, would entitle him to relief, the habeas court should conduct an evidentiary hearing, e.g., Hill v. Moore, 175 F.3d 915 (6th Cir. 1999), expand the record. and/or conduct discovery.

A state court decision which does not comport with proper adversarial procedures is entitled to no deference under the AEDPA and is "contrary to established law." Nevers, at 374. Normal procedures require means for cross-examination, calling witnesses, and producing evidence or some similar means of developing the evidence. The state court record, developed through procedures which are consistent with due process, must support the factual basis for a state court decision in order for there to be any deference to the state court decision. Tucker v.

Prelesnik, 181 F.3d 747, 753 (6th Cir. 1999) quoting Nevers v. Killinger, 169 F.3d 352 (6th Cir. 1999).; Brown v. O'Dea, 187 F.3d 572, 577 (6th Cir. 1999) citing Tucker and Nevers; Workman v. Bell, 160 F.3d 276 (6th Cir. 1998) citing Marshall v. Lonberger, 459 U.S. 422, 432 (1993); Berryman v. Morton, 100 F.3d 1089, 1104-05 (3rd Cir. 1996) (under AEDPA, "state court decision of a factual issue which was not fairly supported by the record can hardly be said to be a reasonable determination" entitled to any deference); Neal v. Gramley, 99 F.3d 841, 843 (7th Cir. 1996) (state court "full and fair" hearing is necessary for the state court decision to be entitled to any deference).

In Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997), the state court's failure to hold an evidentiary hearing resulted in a state court decision that was not entitled to any deference under the AEDPA. This was true even though officers of the state Court had made statements concerning factual matters which the state courts accepted as true. The findings were contradictory to the petitioner's allegations. In that case, no deference was due under AEDPA § 104(3), 110 Stat. at 1219 (amending 28 U.S.C. §2254).

A long line of authority, including statements from Justice Rehnquist when he was Assistant Attorney General, supports the proposition that an evidentiary hearing is necessary herein. Lindh v. Murphy, 96 F.3d 856, 870-72 (7th Cir. 1996) (en banc)

reversed on other grounds 521 U.S. 320 (1997); Barntt v. Hargett, 174 F.3d 1128 (10th Cir. 1999); Yackle, A Primer on the New Habeas Corpus Statute, 44 Buffalo Law Review 381, 425-43 (1996) (all of the proposed versions of the new federal habeas legislation required state courts to base decisions on "full and fair consideration" of claims in accordance with due process in order for any deference to be given to state court decision); Id quoting then Assistant Attorney General William Rehnquist, now U.S. Supreme Court Chief Justice; Ohio v. Adult Parole Authority v Woodard, 523 U.S. 272, 292-93 (1998) (Stevens, concurring in part and dissenting part) (if state establishes procedures of right, procedures must satisfy Due Process); Townsend v. Sain, 372 U.S. 293 (1963) (requirement of a "full and fair" hearing is a constitutional matter); Case v. Nebraska, 381 U.S. 336 (1965) (suggesting lack of adequate procedures for hearing federal constitutional claims in state court may violate Due Process); Allen v. McCurry, 449 U.S. 90 (1980) ("full and fair" hearing during state proceedings, consistent with Due Process, required in order for state judgment to have any preclusive effect in federal court in action under 42 U.S.C. §1983); Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 81 (1984); Gutierrez v. Lynch, 826 F.2d 1534, 1537 (6th Cir. 1987); see also, Delgado v. Lewis, 169 F.3d 1148, 1153 (9th Cir. 1999) (holding that de novo review of state court decision is proper under AEDPA, when state court does not articulate basis for its decision, is consistent with lack of deference accorded state court decision which was

rendered without a proper adjudication of the facts).

## B. Appropriateness of pursuing this matter with a pretrial petition.

Historically, the government's charging decision, involving a determination of probable cause "could be reviewed by higher courts on a writ of habeas corpus" prior to trial. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) citing Ex Parte Bollman, 4 Cranch 75, 97-101, 2 L.Ed. 554 (1807), 2 W. Hawkins, Please of the Crown at 112-115 (4th Ed. 1762) and 1 J. Stephen, History of the Criminal Law of England 233, 243 (1883). The Constitution guarantees that any determinations of probable cause, requiring one to stand trial, must be by a "neutral and detached" decision maker. Gerstein, 420 U.S. at 117-118. Any state court decision, which results in pretrial restraint of liberty must be made in a constitutionally adequate manner and may not be arbitrary or capricious. Love v. Ficano, 19 F.Supp. 754 (E.D. Mich. 1998) (a state court's revocation of bail must be made by standards and rules established by the state and not made without the court articulating its reasons under those standards); Puertas v. Michigan Department of Corrections, 88 F.Supp. 775 (E.D. Mich. 2000) (same rationale as in Love, *supra*).

Any pretrial restraints on liberty, even when pretrial release has been obtained, involve high stakes. Gerstein, 420 U.S. at 114. "When the stakes are this high, the detached judgment [of a constitutionally adequate decision maker] is essential" to ensure "meaningful protection from unfounded interference with liberty." Id. There

is a constitutional right not to have restraints on one's liberty, prior to trial, when there has not been a valid determination of probable cause, id and Albright v. Oliver, 510 U.S. 266 (1994) and to have any decision interfering with pretrial liberty made in a manner which is not arbitrary and/or capricious. Love, *supra,* and Puertas, *supra.*

The State of Michigan has choose to keep these restraints intact by a grand jury's finding of probable cause. The decision of the grand jury was in violation of the Equal Protection Clause and the Sixth Amendment right to a fair cross section.

Although this improper decision may be attacked in a post-trial petition for writ of habeas corpus, the costs to society, such as overturning a conviction after trial, are lessened by allowing an attack at this point. Rose v. Mitchell, 443 U.S. 545 (1979). Rose acknowledged that a ***pretrial habeas petition*** may be a proper way to proceed against a grand jury determination made in violation of the Equal Protection Clause.

Moreover, given that some of the protections involve not having to stand trial or having restraints on one's liberty, these aspects of the claim can never be vindicated without access to a pretrial writ. For this reason and the fact that all state court remedies have been exhausted, a pretrial writ is proper. See, Gerstein, *supra,* (injunctive relief to require state to provide pretrial probable cause hearings); Atkins v. People of the State of Michigan, 644 F.2d 543 (6th Cir. 1981) (speedy trial claim and bond); Delk v. Atkinson, 665 F.2d 90 (6th Cir. 1981) (because double jeopardy

claim prevents state from putting defendant through a second trial, the pretrial writ is appropriate to adjudicate the claim; double jeopardy does not just prevent a second conviction); Gully v. Kunzman, 592 F.2d 283 (6th Cir. 1979) (double jeopardy); Puertas, *supra;* Love, *supra.*

WHEREFORE, the Petitioner prays that the Court grant the writ and quash the Indictment. Alternatively, the Petitioner prays that the Court grant a conditional writ based on whether the state employs proper procedures, to determine the issues surrounding the grand jury proceedings, within a time frame to be set by the Court.

Respectfully submitted,

Dated: 9-20-01

Hugh M. Davis, Jr.
Co-counsel for Petitioner

Dated: 9-20-01

Timothy Holloway
Co-counsel for Petitioner