UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE GLASS, JR.,

    Petitioner,

v.

THE PEOPLE OF THE STATE
OF MICHIGAN, and
JENNIFER GRANHOLM,
ATTORNEY GENERAL,

    Respondents.
_____/

CASE NO. WS 5:01-CV-121
HONORABLE RICHARD ALAN ENSLEN
UNITED STATES DISTRICT JUDGE

### Respondent's Response to Motion for Immediate Consideration and for an Order to Stay Proceedings in State Court

Petitioner, Willie Glass, Jr., was indicted by a three-county grand jury six and one-half years ago for conspiracy to deliver over 650 grams of cocaine. He has not yet been tried. Petitioner challenged his indictment on the basis that two of the counties, Eaton and Clinton, were over-represented on the grand jury while Ingham County was under-represented. This lack of proportional representation, Glass alleged, resulted in an under-representation of blacks on the grand jury in violation of the Sixth and Fourteen Amendments..

Petitioner moved to dismiss the indictment, resulting in an evidentiary hearing in the trial court on March 12, 1997. Petitioner claims that the hearing was insufficient because of the refusal of some witnesses to testify based on grand jury secrecy considerations. After the trial court denied the motion to dismiss, Petitioner sought an interlocutory appeal. The Michigan Court of Appeals declined to hear the appeal. (Michigan Court of Appeals Docket No. 203592)

Petitioner sought leave to appeal to the Michigan Supreme Court, which remanded the case to the Court of Appeals to consider the issue as on leave granted. (Michigan Supreme Court Docket No. 110255) The Court of Appeals, on remand, ordered a further evidentiary hearing and unsealed the grand jury records. (Court of Appeals Docket No. 206426) The prosecutor sought leave to appeal to the Supreme Court, which was granted. The Supreme Court, in an opinion issued on June 12, 2001, held that Petitioner had failed to establish a prima facie case of racial discrimination under the 14th Amendment, and would be unable to do so if the grand jury records were unsealed. The court further found it unnecessary to decide the Sixth Amendment claim, because the United States Supreme Court has not imposed the fair cross-section requirement on states that allow indictment by grand jury. The court also held that the reasons for secrecy in grand jury proceedings outweighed the need for further discovery under the circumstances of the case. (Supreme Court Docket No. 114795)

Trial for this matter was set for October 22, 2001. On September 20, 2001, Petitioner filed an action for habeas corpus relief in the United States District Court for the Eastern District of Michigan. On September 28, 2001, that court entered an order of transfer to the Western District. Rather than wait for the transfer to become effective, Petitioner filed this action on October 4, 2001, seeking an order prohibiting the commencement of trial in Eaton County and an evidentiary hearing to allow Petitioner to establish his claims. This Court ordered Respondents to file responses by 5:00 p.m., October 17, 2001.

Because the federal courts are prohibited from interfering in state court criminal prosecution absent extraordinary circumstances not present here, Respondent requests this Court to dismiss the petition.

### Argument

**Federal court interference with ongoing criminal prosecutions is prohibited under the circumstances of this case.**

Petitioner requests this Court to consider and decide his constitutional claim prior to trial and to issue an order enjoining the state trial court from commencing trial, scheduled to start on October 22, 2001.

Federal courts are ordinarily prohibited from enjoining pending state criminal proceedings except under extraordinary circumstances where the danger of irreparable injury is great and immediate. *Younger v. Harris*, 401 U.S. 37, 45 (1971). This rule is grounded in the concept of comity, a proper respect for state functions and the belief that states should be left free to perform their separate functions in their separate ways. *Juidice v. Vail*, 430 U.S. 327, 334 (1977). The Supreme Court has recognized exceptions to this rule only where there has been a "showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Younger, supra,* at 54.

A colorable double jeopardy claim has been held to justify pretrial federal court intervention. In *Abney v. U.S.*, 431 U.S. 651, 660-662 (1977), the court explained the basis for this exception:

> [T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment. . . . However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense. . . . Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge . . . must be reviewable before that subsequent exposure occurs.

Lower federal courts have, accordingly, considered pretrial double jeopardy claims in habeas corpus cases. *Gully v. Kunzman*, 592 F.2d 283 (6th Cir. 1979); *Selk v. Atkinson*, 665 F.2d 90 (6th Cir. 1981); *Gilliam v. Foster*, 61 F.3d 1070 (4th Cir. 1995).

A second exception to the general prohibition of federal court intervention in state criminal trials results from a line of cases commencing with *Braden v. 30th Judicial Court of Kentucky*, 410 U.S. 484 (1973). In that case, a petitioner who had been convicted and imprisoned in Alabama had a detainer lodged against him by the state of Kentucky and sought unsuccessfully to compel Kentucky to bring him to trial on the charges. The Supreme Court majority reiterated the rule that federal habeas corpus is not available to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court. *Id.*, at 489. The court stated:

> Petitioner does not, however, seek at this time to litigate a federal defense to a criminal charge, but only to demand enforcement of the Commonwealth's affirmative constitutional obligation to bring him promptly to trial.

*Id.*, at 489-490. The court was very careful to emphasize the limited nature of its holding:

> [P]etitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum. . . . A federal habeas corpus action at this time and under these circumstances does not jeopardize any legitimate interest of federalism.

*Id.*, at 491-492. The careful distinction emphasized by the Supreme Court in *Braden* has not been overlooked by the lower federal courts. In *Dickerson v. State of Louisiana*, 816 F.2d 220 (5th Cir. 1987), an inmate subject to a detainer attempted to obtain a trial by the state or, alternatively, dismissal of the charges against him. The fifth circuit upheld the district court's dismissal of the habeas petition. The court noted that the state had indicated at oral argument that it intended to try Dickerson as soon as possible, and that the inmate could bring another

4

habeas petition to enforce that promise, if necessary. *Id.*, at 228, n. 15. The panel stated its holding as follows:

> We hold that pre-trial habeas relief is not available to consider Dickerson's speedy trial or due process claims under the circumstances of this case. Federal habeas relief should not be used as a "pre-trial motion forum for state prisoners." *Braden*, 410 U.S. at 493, 93 S.Ct. at 1129. To adopt Dickerson's contentions in this case would create just such a result. After the state proceedings are concluded, federal habeas proceedings can be instituted by Dickerson after he has exhausted his state remedies.

*Id.*, at 329.

The Sixth Circuit reached a similar conclusion in *Atkins v. People of the State of Michigan*, 644 F.2d 543 (6th Cir. 1981). The petitioner in that case was charged with first-degree murder. A series of pretrial rulings by the trial court, and subsequent appeals by the prosecutor, delayed the trial, culminating in an effort by the defendant to force the court to try him or to grant pretrial bond. Failing in the state court, Atkins filed an action for habeas relief in the United States District Court for the Eastern District of Michigan, seeking dismissal of the case on speedy trial grounds, immediate commencement of the trial, or reinstatement of bond set by the trial court. The district court granted habeas relief, ordering dismissal of the murder charge. The Sixth Circuit distinguished cases in which a federal habeas court enforces a speedy trial guarantee by ordering the commencement of a trial, and those in which dismissal is sought:

> Thus, the speedy trial clause protects two related but distinct interests: the enforcement of the state's duty to provide a prompt trial and the protection of defendants from the prejudice that arises from a state's failure to carry out that duty. As noted by the Fifth Circuit in *Brown v. Estelle,* [530 F.2d 1280 (5th Cir. 1976)] *supra*, "[t]his distinction apparently turns upon the type of relief sought: an attempt to dismiss an indictment or otherwise prevent a prosecution" protects the defendant from prejudice and is normally not attainable by way of pretrial habeas corpus; but an attempt to force the state to go to trial may be made prior to trial, although state remedies must still be exhausted. 530 F.2d at 1283.

5

*Id.*, at 547. The Sixth Circuit panel concluded that the state had violated its duty to bring Atkins promptly to trial. Noting that the state had, at oral argument, expressed willingness to commence the trial, the court ordered that trial commence within 60 days of its opinion. Atkins was not entitled to dismissal because only one element – unreasonable delay – had been established. The degree of prejudice to petitioner, the court concluded, could be determined only after completion of the trial.

Clearly, the only "exceptional circumstances" justifying federal interference in ongoing state criminal proceedings involve those constitutional claims which will be irretrievably lost without such intervention. In *Gully v. Kunzman*, 592 F.2d 283, 287 (6th Cir. 1979), the court considered (and rejected) a habeas corpus petitioner's double jeopardy claim, but refused to consider the petitioner's claims that his retrial, pursuant to a statute which had been enacted after his first trial, was barred by the due process, equal protection and *ex post facto* clauses of the Constitution. The court concluded that those claims could be considered in a post-trial application for habeas relief:

> These provisions [the due process, ex post facto and equal protection clauses] insure notice, regularity and impartiality in connection with trials and the similar treatment of similar cases. None, however, involves the "right not to be tried" which lies at the heart of the double jeopardy guarantee. The gist of all of these claims is that it would be unfair to impose a death sentence upon the Gullys if they are reconvicted. But petitioners might not be reconvicted; and, as we have already explained, there is no assurance that they will receive a death sentence even if they are, for the new Kentucky death penalty statute, if applied to these offenses, is discretionary, not mandatory. Moreover, in the event the prosecutor succeeds in obtaining a sentence of death, the alleged unfairness of this result may be reliably assessed, and eliminated, after the trial on direct appeal in the state court system. As petitioners should already know from their experience after the first trial, their claims will doubtless receive careful scrutiny from Kentucky's appellate courts. After exhaustion of remedies in the state courts, post-conviction habeas corpus remedies are available in the federal courts.

*Id.*, at 287-288. Petitioner argues that some of the protections afforded by the Sixth Amendment and the Equal Protection Clauses "involve not having to stand trial or having restraints on one's liberty." (See Petitioner's brief, p. 17) The petitioner in *Dickerson, supra,* made a similar claim:

> The Court recognized in *Braden*, however, that federal habeas is available to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction if "special circumstances" exist. *Braden*, 410 U.S. at 490, 93 S.Ct. at 1127. Thus the question is whether such circumstances exist here. Dickerson has not specifically argued that any "special circumstances" exist that would obviate the exhaustion requirement. Since he has been representing himself pro se for much of this litigation, however, we must interpret his argument liberally. The premise of Dickerson's argument is that he has a right not to stand trial. Dickerson can be seen as arguing that in order to vindicate this right, there must be some pre-trial forum available to adjudicate his constitutional claim because otherwise he would be required to go through an unconstitutional trial. Consequently, Dickerson appears to be arguing that his sixth amendment right to a speedy trial is important enough to constitute a "special circumstance" under *Braden*.
>
> We decline to accept Dickerson's analysis that the sixth amendment right to a speedy trial is a per se "special circumstance" because to do so would eliminate the careful distinction drawn by the court in *Braden* and reiterated in cases like *Brown* and *Atkins* between a defendant disrupting the orderly functioning of a state's judicial processes as opposed to enforcing his right to have the state bring him promptly to trial. We know of no case authority that holds that the constitutional right to a speedy trial qualifies as a per se "special circumstance" that obviates the exhaustion requirement. Indeed, the cases in which claims similar to Dickerson's have been raised have denied habeas relief on exhaustion and federalism grounds.

*Id.*, at 226-227.

Unlike a number of the cases considered by the federal courts, Petitioner's present claim is exhausted in the state courts by virtue of the grant of an interlocutory appeal by the Michigan appellate courts. Petitioner claims that he will be required to endure "years of appeals and other post-conviction remedies in the state courts" before he can have federal court adjudication of his grand jury claim, and that the state courts' decisions on that claim are the "law of the case." Without commenting on the validity of these assertions, Respondent notes that pursuant to

United States Supreme Court law, Petitioner's grand jury claim will not be extinguished by an otherwise valid conviction. *Rose v. Mitchell*, 443 U.S. 545 (1979). Moreover, Petitioner's alarm at the delay in adjudication of his claims is not distinguishable from that of any criminal defendant who unsuccessfully raises a pretrial constitutional claim. Thus, under Petitioner's reasoning, entrapment claims, Miranda claims, ineffective assistance of counsel claims involving pretrial matters, and many others would be suitable for federal habeas intervention in state criminal proceedings. The only thing that distinguishes this case from most cases involving pretrial court decisions is that the state appellate courts here granted careful consideration to Petitioner's contentions. The Seventh Circuit, in *Neville v. Cavanagh*, 611 F.2d 673, 675-676 (7th Cir. 1979), considered a case precisely on point:

> Neville argues that the fact that the Illinois Supreme Court has ruled against him on the merits of his claim constitutes "special circumstances." Thus, he contends that he has satisfied the exhaustion requirement and that the federal court should in this case "adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. at 489, 93 S.Ct. at 1127.
>
> It is true that here, as in *Braden*, the petitioner has presented his claim to the state courts. Moreover, he has received a ruling on the merits from the Illinois Supreme Court. That holding is, without doubt, the law of the case, and Neville cannot realistically anticipate a different result on this issue at trial or on direct appeal. Nonetheless, we do not believe that on this record the district court was wrong to decline to exercise federal habeas corpus jurisdiction. We believe that this case differs from *Braden* in a very significant respect: the petitioner there sought to compel a trial in state court, not to avoid one. The *Braden* court stressed the significance of this circumstance:
>
>> "[P]etitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum.
>>
>> "We emphasize that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court."

8

410 U.S. at 491, 493, 93 S.Ct. at 1128, 1129.

> In light of the fact that Neville does seek to derail a pending state criminal proceeding, and that he may be acquitted at trial, we believe the district court was correct in denying the petition for a writ of habeas corpus at this time. We note that this decision does not bar federal consideration of Neville's claim. Rather, it merely delays such consideration until "a time when federal jurisdiction will not seriously disrupt state judicial processes." *United States ex rel, Parish v. Elrod, supra* [589 F.2d 327 (7th Cir. 1979)] at 329.

The federal court's intervention in state criminal proceedings in this case would, in effect, penalize the state appellate courts for granting a pretrial hearing on Petitioner's claims. If the state courts had merely declined to consider an interlocutory appeal, it is highly unlikely that the federal court would entertain Petitioner's claims in a pretrial habeas corpus action. In *Moore v. DeYoung*, 515 F.2d 437 (3rd Cir. 1975), the court held that a pretrial claim was not exhausted where the appellate courts had declined to consider an interlocutory appeal, and the petitioner would be able to raise his claim on appeal in the event of conviction.

In addition to the traditional considerations of comity, then, the exercise of federal jurisdiction in this case would discourage the state courts from considering the merits of pretrial claims under even the most compelling circumstances.

Finally, consideration of Petitioner's claims at this time would deprive the state of the deferential standard of review implemented by Congress in the passage of the AEDPA. Petitioner, proceeding under 28 U.S.C. § 2241, would have his claim adjudicated under a more favorable standard than a similarly situated petitioner who either did not seek an interlocutory appeal or who did not receive a decision on the merits by the state appellate courts. There is no rational basis for treating claims differently in these circumstances.

Because pretrial habeas corpus jurisdiction and federal court interference with ongoing state criminal proceedings should be exercised only in the most limited of circumstances, and

9

only to vindicate constitutional rights that may be protected in no other way, this Court should decline to consider Petitioner's claims in advance of trial.

## Conclusion

For the foregoing reasons, Respondent requests this Court to dismiss the petition for writ of habeas corpus.

Respectfully submitted,

JENNIFER M. GRANHOLM
Attorney General

*/s/ Janet A. Van Cleve*

Janet A. Van Cleve (P36027)
Assistant Attorney General
Habeas Corpus Division
First Floor One Michigan Building
120 North Washington Square
Lansing, Michigan 48913
517/373-4875

Dated: October 17, 2001